# EXHIBIT 1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------X
JESSE LANGEL,                                                                    Index No.:

                      PLAINTIFF,                                    **SUMMONS WITH NOTICE**

   -against-

                                                       Plaintiff's address: 30 Wall Street,
APPLEGATE FARMS, LLC,                                                          8th Floor
                                                       New York, NY 10005.

                    DEFENDANT.
-------------------------------------------------------------X     The basis of venue is the county
                                                       Plaintiff's residence.

To the Person(s) Named as Defendant(s) above:

    **YOU ARE HEREBY SUMMONED** to answer the complaint in this action and to serve a copy of your answer or if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff at the address set forth below, and to do so within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded below.

    **YOU ARE HEREBY NOTIFIED THAT** should you fail to appear, a judgment will be entered against you by default for the relief demanded below.

    Note:  The law or rules of court provide that:

a) If this summons us served by its delivery to you or (for a corporation) an agent authorized to receive service personally within the State of New York, you must answer within 20 days after such service; or
b) If this summons is served otherwise than a designated in subdivision (a) above, you are allowed 30 days to answer after the proof of service is filed with the clerk of the court.
c) You are required to file a copy of your appearance together with proof of service with the clerk of the court of the court in which the action is brought within ten days of the service of the appearance.

**TAKE NOTICE** that the object of this action and the relief sought is to recover damages, and an injunction, for the defendant's violations of NYGBL § 349 (Deceptive Acts and Practices Unlawful), NYGBL § 350 (false advertising), common law fraud and deceit, gross negligence, breach of express warranty, breach of implied warranty, recovery of attorneys' fees (NYGBL § 349h), and the imposition of punitive damages. Upon your failure to appear, a judgment by default will be taken against you for the sum of 65,000.00 with interest thereon from October 13, 2021, together with the costs and attorneys' fees permitted under GBL § 349(h).

On October 13, 2021, the plaintiff purchased the defendant's meat product, 6 ounces of packaged chicken-breast slices encased in a plastic, sealed package baring bar-code number 025317125482 ("the product"). The purchase was made at D'Agostino Supermarkets, Inc. located at 578 Third Avenue, New York, NY 10016. The Invoice number is 00014085 and the TS number is 14085. The plaintiff paid $7.99 for the product. The meat product was *expired*. It read near the seal, "USE OR FREEZE BY 08/29/2021  1141-3C 09:16.

Among other representations, on the package itself (annexed hereto and incorporated by reference), were the following representations:

(Front)
"APPLEGATE HUMANELY RAISED"
"CHICKENS RAISED ON VEGETARIAN FEED ON FAMILY FARMS, WITH AT LEAST 24% MORE SPACE THAN INDUSTRY STANDARD AND ENVIRONMENTAL ENRICHMENTS TO PROMOTE NATURAL BEHAVIORS AND WELL-BEING."

(Back)
"We source from family farms, where animals are raised with care and respect. We believe this leads to great tasting products and peace of mind—all part of changing our mission."

The phrase "APPLEGATE HUMANELY RAISED" is placed conspicuously on the front of the package, in contrasting colors, on the front side of a sketched barn. This type of marketing is done intentionally to direct the consumer's attention to that claim, which is false, misleading, and deceptive. As set forth below, upon information and belief, the defendant does not raise most or all of the animals itself. That hearsay claim references the farms or establishments from which it "sources" the animals or carcasses that it sells.

The defendant's representation that "[w]e source from family farms..." implies that it purchases its meat elsewhere, and does not raise the animals itself. Therefore, "APPLEGATE HUMANELY RAISED" is inherently deceptive, false, materially misleading, and subject to differing interpretations. Reasonable consumers would and do conclude that, based on those representations, the defendant raises, or has direct control over the raising, of the animals birthed, raised, and slaughtered that wind up in its packages. Instead, upon information and belief, the defendant relies on hearsay

statements, hearsay practices, and self-serving certifications of third parties to support and "verify" its claims. The defendant exploits consumer vulnerabilities with false and misleading words and phrases such as "humanely raised," "promotes natural behaviors, and well-being." The defendant's business model is predicated on sourcing animals from farms that engage in acts amounting to the opposite of those representations. The defendant brazenly uses phrases like "care and respect," and "peace of mind" in order to induce New York consumers into paying the defendant millions of dollars for its products. The deceptive and abusive practices alleged herein are commonly referred to as "humane washing."

Taken apart or together, the above representations are false (within the meaning of GBL §350), deceptive, and materially misleading. Some or all of the claims are factually impossible using any reasonable standard. The above misrepresentations exploit the misguided trust of unwitting consumers in an area where there is a lack of adequate regulation or mechanisms for enforcement. The above representations were fabricated by the defendant, are vague, are subject to differing interpretations, and were made possible by weak or non-existent regulatory enforcement.

Upon information and belief, the defendant used to pay for certification, such as "Certified Humane" by the Humane Farm Animal Care program. The defendant decided to stop paying for it but continues to represent "Humanely Raised" on its packaging (see attached). When the Animal Welfare Institute submitted a FOIL request to the Food Safety and Inspection Services (FSIS) for label-approval documents for three different Applegate products, all of which carry the "Humanely Raised" claim, the agency responded that it was *unable to locate* information regarding the claim on *any* of the Applegate products.[1] The defendant's intentional refusal to supply FSIS (by the time of that FOIL response) with documents substantiating its animal-welfare claims reasonably infers that it lacks that substantiation.

The defendant's website and other marketing materials currently make additional representations that either contradict or do not appear on its packages (see attached). For example, the defendant's website asserts, "[A]ll of the chickens raised for Applegate meet Global Animal Partnership® (Step 2 or higher) or Certified Humane® standards and are verified." If neither representation is currently accurate, that itself is a deceptive act and practice, and amounts to consumer fraud. On the attached package, the defendant asserts that chickens have "at least 24% more space than industry standards" while its website asserts that it has "up to 29% or more." An additional 5% space when viewed in the context of poultry life in factory farming is a material deviation. Moreover, the defendant is aware and exploits the fact that the consuming public has no way to verify these claims.

---

[1] Letter from Leilani B. Hannie, FOIA Officer, FSIS, to Dena Jones, Farm Animal Program Manager, AWI (Feb. 4, 2013) (On file with AWI).

The plaintiff relied on the above representations when purchasing the product. Upon information and belief, the above representations lack sufficient evidentiary support to justify them. The plaintiff paid a premium for the product based in part on the above representations. The premium paid for the defendant's deceptive advertising is more than what he would have paid without the use of such false and deceptive advertising. The plaintiff purchased the product from a D'Agostino Supermarket in which the defendant's products were conspicuously placed for maximum consumer attention. The defendant's deceptive use of false advertising deprived the plaintiff of selecting a product that complied with fair and ethical animal-welfare standards.

The above representations were affirmations of fact and promises made by the defendant to the consuming public at large, including the plaintiff, which relates to the goods and services and became part of the basis of the bargain. The plaintiff has been injured monetarily and non-monetarily because of the prices and premiums paid as a causal consequence of the defendant's misrepresentations and conduct. In addition, the defendant's systematic and deceptive use of materially false advertising enabled it to sell many more units fostering an anti-competitive environment. This environment lowered its cost of goods sold for the product thereby enabling it to pump New York City supermarkets full of the product, which found its way into the plaintiff's hands.

The defendant used the above misrepresentations to intentionally confuse and mislead the consuming public, as it did in this case, to induce sales for profit. The defendant's misrepresentations are particularly egregious during a time of multiple public-health crises, including heightened rates of cancer, heart disease, and diabetes, concurrently with the Coronavirus Pandemic. The defendant knows that a large portion of the consuming public is concerned about animal welfare in factory farming, and it exploits that concern through the above misrepresentations. For example, in a survey commissioned by the American Humane Association, 95 percent of respondents indicated a belief that humanely raised labels signify better treatment of animals.[2] The defendants exploit that belief to induce sales through its false advertising.

The defendant may not escape liability on preemption grounds through invocation of federal Acts, such as the Poultry Products Inspection Act (PPIA) since that Act does not regulate in any manner the handling, shipment, or sale of *live* poultry. The PPIA is wholly silent on the treatment of farm animals (including feeding procedures) or methods of slaughter for poultry. Nor does the FMIA cover the pre-slaughter treatment of non-poultry animals. The plaintiff's claims are not premised on an ingredient or labeling challenge that would come within the purview of the PPIA, FMIA, USDA, or any other law or Act. The USDA has not created law in the area of humane labeling. Although misbranding or mislabeling are a concern of the PPIA and FMIA (i.e. weight, type of meat, nutrition information), neither Act addresses or governs the pre-slaughter humane treatment of animals.

---

[2] American Humane Association, Humane Heartland, Farm Animal Welfare Survey, 12 http://www.americanhumane.org/assets/humane-assets/humane-heartland-farm-animals-survey-results.pdf.

Furthermore, upon information and belief, any documentation that the defendant submitted to the Food Safety and Inspection Services (FSIS) in support of the above representations were deficient, misleading, and materially false. Any purported pre-approval by the FSIS—especially one that lacked an on-farm inspection by the USDA—represented nonbinding guidance and does not preempt the plaintiff's claims herein pursuant to governing law of the United Stated Supreme Court and governing law of the Second Circuit of the United States. Upon information and belief, not one FSIS personnel visited the defendant's farms, or the farms from which it "sourced" its meat, to verify the defendant's representations.

Congress has not expressly or impliedly expressed its intent to exclusively occupy the area forming the basis of the plaintiff's claims, or impair New York State's policing power, especially as to the civil remedies, which are consistent with the aim of the federal government. The state remedies sought for the defendant's fraudulent humane labeling are not preempted because they seek the same goal required by federal law—veracity. The plaintiff seeks remedies that would not require "anything in addition to, or different from" federal law to implicate preemption. Nor is there any conflict between the plaintiff's claims and any applicable federal law or act that would deprive the plaintiff from bringing this action.

Under the common law causes of action asserted in this action, the defendant's conduct reflects a malicious, wanton, and reckless behavior, in complete disregard of the rights of New York consumers, which warrants the imposition of punitive damages.

Dated: October 17, 2021

Defendant's address:

Applegate Farms, LLC
750 Route 202
South Suite 300
Bridgewater, NJ 08807

Attorney for Plaintiffs:

_____
Jesse Langel, Esq.
30 Wall Street, 8th Floor
New York, NY 10005
P: 646-290-5600

Exhibit to Summons with Notice
Purchase of Defendant's Product:
10/13/21



